IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZHENLI YE GON, ) | |
| ) | |
| Petitioner, ) | Case No. 7:11-cv-575 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| ) | |
| ERIC HOLDER, JR., *et al.*, ) | By: Robert S. Ballou |
| ) | United States Magistrate Judge |
| Respondents. ) | |

Petitioner, Zhenli Ye Gon, seeks his immediate release from detention pending the outcome of the present habeas corpus proceeding. Ye Gon bases his motion primarily upon the claim that he has been incarcerated in this extradition proceeding or related drug charges for more than five years, that he does not present a risk of flight and that there exists a substantial likelihood of success on the merits. This court has jurisdiction pursuant to 28 U.S.C. § 636 (b)(1)(A) upon referral from the presiding district judge. The parties have fully briefed and argued the law and facts, and the matter is now ripe for disposition. Upon consideration of the whole record, the applicable law, and the argument of counsel, the court finds that there are no special circumstances to warrant consideration for bond and further that Ye Gon does present a flight risk even if any such special circumstances were found to exist.

**I.      Factual Background**

The factual background which brings this bond request before the court at this time is important to understanding these proceedings. Ye Gon is a naturalized Mexican citizen who was born in China. On July 23, 2007, he was arrested in Maryland on federal drug charges pending before the District of Columbia district court. The federal grand jury subsequently indicted Ye

Gon on the charge of conspiring to aid and abet the manufacture of 500 grams or more of methamphetamine, with the knowledge that it would be imported into the United States, in violation of 21 U.S.C. §§ 959 and 963, and 18 U.S.C. § 2.  Ye Gon was denied bond in that criminal proceeding and remained in the custody of the U.S. Marshal facing the federal charges until August 28, 2009 when the district court dismissed the indictment with prejudice on the motion of the United States.

While the federal criminal charges were pending before the D. C. District Court, the Mexican government formally requested Ye Gon's extradition to Mexico to face numerous charges including violations of Mexican organized crime, drug, firearms and explosives, and money laundering laws.  The Government filed a complaint in the D.C. District Court on September 15, 2008 seeking to extradite Ye Gon to Mexico to face the criminal charges there. The Government moved to detain Ye Gon on the extradition request, and by written opinion, the court granted the Government's motion and continued to detain Ye Gon without bond pending the extradition review.  In re Extradition of Ye Gon, 2009 WL 3336092 (D.D.C Oct. 15, 2009). The extradition judge thoroughly analyzed the evidence then before the court and determined that Ye Gon presented a very real flight risk.

> Despite the respondent's protestations to the contrary, he most definitely poses a flight risk. In addition to the arguments put forth by the government, the respondent is accused of engaging in money laundering according to the facts cited in the Mexican arrest warrant. When the respondent's home in Mexico City was searched, authorities seized $205,564,763 in U.S. dollars, $17,306,520 in Mexican Pesos, 201,460 in Euros, $113,260 in Hong Kong dollars, and $180 in Canadian dollars. An individual who had in excess of $200 million U.S. dollars in cash secreted in his home is someone who clearly possesses the means and motive to flee this jurisdiction and thus presents a clear risk of flight.

2009  WL 3336092, at *3.

The extradition judge also determined that the record contained no evidence of a special circumstance to warrant setting a bond. Specifically, the court determined that any delay to that point rested with Ye Gon and his repeated requests to extend the extradition proceedings. No other evidence came before the court to suggest that special circumstances existed to allow Ye Gon to be released on bond.

Hearings were held in February, May and June 2010 on the extradition complaint. The presiding judge issued his findings of fact and conclusions of law and a certificate of extraditability on February 9, 2011. In re Extradition of Ye Gon, 768 F. Supp. 2d 69 (D.D.C. 2011).

Ye Gon filed a petition for a writ of habeas corpus in this court[1] pursuant to 28 U.S.C. § 2241 contesting the extradition decision, and a duplicate petition in D.C. District Court. This court transferred the petition here to the D.C. District Court on the grounds that venue was proper in that court. The D.C. District Court, however, dismissed Ye Gon's habeas action filed there for lack of jurisdiction and transferred the petition originally filed before this court back to the Western District of Virginia. See Ye Gon v. DC Office of the Attorney General, 825 F. Supp. 2d 271 (D.D.C. 2011).

Ye Gon now files this motion requesting bond.

## II.     Legal Standard

The Government argues as a threshold matter that Ye Gon is not entitled to a bond, as a matter of law, because a certificate of extraditability has issued. In essence, the Government relies upon the notion that the United States cannot fulfill its treaty obligation to a requesting government if it permits the release of persons determined extraditable. The Government cites a

---

[1] Ye Gon is presently being held in the Orange County Correctional Center, and thus, jurisdiction for this habeas proceeding is properly in the Western District of Virginia.

3

single district court opinion for the proposition that a habeas court has no authority to grant bond in a proceeding that challenges an extradition decision—In re Extradition of Markey, 2010 WL 610975, *4 (N.D. Ind. Feb. 18, 2010). In Markey, the court held that under 18 U.S.C. § 3184, once the court has issued a certificate of extraditability, the government is then required to turn the person over to the Secretary of State and may not grant bond. Markey is inapposite, for several reasons. First, the issue of the court's authority to release Markey was not contested— Markey had expressly agreed there that the court did not have such authority. Markey also does not govern here because it arose in the initial extradition proceeding, not in the habeas setting. Even if it were on all fours with the instant case, moreover, Markey is not binding on this court, and because it is contradicted by the numerous decisions of other courts discussed below, it is not persuasive.

Several courts have specifically considered and rejected the argument advanced by the Government. See Wroclawski v. United States, 634 F. Supp. 2d 1003, 1005-1006 (D. Ariz. 2009); In re Extradition of Kapoor, 2012 WL 2374195, *2-*4 (E.D.N.Y. 2012). The right to bond in the international extradition context is rooted in the federal common law, and was first recognized in the century-old Supreme Court decision of Wright v. Henkel, 190 U.S. 40 (1903). There, the Supreme Court explained that "bail should not ordinarily be granted" in an international extradition matter, but expressly rejected the premise that the court could not grant bail "whatever the special circumstances." Id. at 63. Courts interpreting Henkel have widely held that the special circumstances test suggested in the opinion establishes a presumption against bail in an international extradition case. See Jimenez v. Aristiguieta, 314 F.2d 649, 653 (5th Cir. 1963); In re Extradition of Nacif–Borge, 829 F. Supp. 1210, 1214 (D. Nev. 1993); In

4

re Extradition of Gonzalez, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); In re Extradition of Garcia, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010).

> The presumption of innocence guarantees that defendants pending trial are entitled to a concomitant presumption in favor of bail in this country. The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985); 18 U.S.C. §§ 3141 et seq. However, in foreign extradition cases, a presumption against bail exists due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country. Wright v. Henkel, 190 U.S. 40, 63, 23 S. Ct. 781, 787, 47 L. Ed. 948 (1903) (bail "should not ordinarily be granted in cases of foreign extradition"); Salerno v. United States, 878 F.2d 317, 317 (9th Cir.1989).

Nacif–Borge, 829 F. Supp. at 1214.

The courts have defined special circumstances in many different ways. A long discussion of the many cases which have addressed the applicability of special circumstances does not advance the analysis in this case. Rather, it is simply worth summarizing that "courts consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extraditees. Gonzalez, 52 F. Supp. 2d at 735 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992) (rejecting "need to consult with counsel, gather evidence and confer with witnesses" as an extraordinary special circumstance because "all incarcerated defendants need to do these things"). The special circumstances test applies where the need to grant bail is "pressing as well as plain," In re Extradition of Russell, 647 F. Supp. 1044, 1049 (S.D. Tex. 1986) (citing In re Klein, 46 F.2d 85, 85 (S.D.N.Y. 1930)), and "when the requirements of justice are absolutely peremptory." Russell, 647 F. Supp. at 1049 (citing In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909))."

5

The Ninth Circuit in Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989), gave three examples of special circumstances: (1) raising substantial claims upon which appellant has a high probability of success, (2) serious deterioration of health while incarcerated, and (3) unusual delay in the appeal process. These factors are identical to those identified two years earlier in United States v. Bell, 820 F.2d 980, 981 (9th Cir. 1987), to show exceptional circumstances that would justify a person's release pending appeal from an order revoking probation.

The substantial majority of courts to consider the question have required proof of special circumstances by clear and convincing evidence. See e.g., Garcia, 761 F. Supp. 2d at 474-75 (electing to apply a clear and convincing evidence standard after compiling cases that apply a clear and convincing standard, a preponderance of the evidence standard, or do not comment on the burden); In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1088 (C.D. Cal. 2010) (collecting cases) ("Many courts have required clear and convincing evidence."); Gonzalez, 52 F. Supp. 2d at 735 (applying a clear and convincing evidence standard (citing Nacif–Borge, 829 F. Supp. at 1215)); United States v. Ramnath, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008) (collecting cases that apply a clear and convincing evidence standard and applying same); In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing Nacif–Borge, 829 F. Supp. at 1215) (applying a clear and convincing evidence standard).[2] Furthermore, bond in international extraditions is intended to be a rare event. Borodin v. Ashcroft, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001) ("Release on bail in extradition cases should be 'an unusual and

---

[2] A few courts have found that special circumstances need only be shown by a preponderance of the evidence. See, e.g., Garcia v. Benov, 2009 WL 6498194, at *3 (C.D. Cal. Apr. 13, 2009) (rejecting the analysis behind adopting a clear and convincing evidence standard articulated in Nacif-Borge, 829 F. Supp. at 1214-15); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1036 n.4 (C.D. Cal. 2006). These cases have been characterized as "a negligible minority." Garcia, 761 F. Supp. 2d at 474-75.

extraordinary thing.'") (quoting United States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912)). Given that bond is to be rare, the heightened burden of clear and convincing evidence is the sounder approach.

As to risk of flight, it is even more apparent that the clear and convincing evidence standard should apply. In an international extradition matter, "our nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments." Garcia, 761 F. Supp. 2d at 475 (citing Wright, 190 U.S. at 62; Ramnath, 533 F. Supp. 2d at 665). The release of an international fugitive who then successfully fled could seriously mar the reputation of the United States. Even assuming the fugitive was captured after fleeing, "the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." Wright, 190 U.S. at 62. Moreover, as the Government notes, any forfeiture of bail by an absconding fugitive would leave the requesting country "without any meaningful remedy." (Dkt. No. 99 at 11.) As the Supreme Court has put it, "[t]he enforcement of the bond, if forfeited, would hardly meet the international demand." Wright, 190 U.S. at 62. The Court finds, based upon these considerations, that Ye Gon must show that he poses no risk of flight by clear and convincing evidence.

### III.  Analysis

The focus of Ye Gon's claim in support of release is that the proceedings have taken too long and that he bears a substantial likelihood of prevailing on the merits in this habeas action. As to the likelihood of success, the court does not find that this circumstance, either standing alone or considered in combination with the length of time since these extradition proceedings

began, constitutes a special circumstance sufficient to warrant bond. The extradition court analyzed at length the legal issues raised by Ye Gon. Each of the legal and factual issues Ye Gon raises are contested by the government, and thus, it does not appear by clear and convincing evidence that Ye Gon will prevail in this habeas proceeding.

Ye Gon also makes several points that he has no incentive to flee because to do so would subject him to criminal prosecution in the United States for "bail jumping." Ye Gon also contends that he has an "incentive" to stay in the United States and fight his extradition because of his perceived strength of the defenses to extradition. The court has carefully considered these arguments, and does not conclude that these factors individually or in combination establish a clear and convincing case that Ye Gon is not a flight risk.

Regarding the length of time these proceedings have taken to get to this point, the court finds that this likewise is not a special circumstance warranting release on bond. Ye Gon has been detained for a significant period of time collectively in both the criminal matter and the present extradition proceeding. The extradition court considered at length the issue of how long extradition matters take to resolve, and that many of the delays in getting the case to maturity before the extradition court were at the request of Ye Gon.

Ye Gon has raised many challenges to the decision of the extradition court. Careful consideration of these issues and review of the significant record will yield a decision as soon as reasonably practicable. The court has weighed the assertions of Ye Gon regarding the time detained against the allegations in Mexico regarding his alleged involvement in criminal activity and the items found when the Mexican authorities searched his house (as outlined by the extradition court). The court finds that these facts significantly suggest that Ye Gon is a flight

risk and thus the factors bearing in favor of detention substantially weigh against granting bond despite the time it has taken to bring this stage of the proceedings to a conclusion.

For the foregoing reasons, Ye Gon's request for bond is **DENIED.**

Entered:  October 22, 2013

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge